**UNITED STATES of America**

v.

**Joseph WALKER et al.**

**Crim. No. HM76–0635.**

United States District Court,
D. Maryland.

April 15, 1977.

Jervis S. Finney, U. S. Atty., D. Md., Asst. U. S. Attys. Andrew Radding and Neal Janey, Baltimore, Md., for U. S.

Joel Hirschhorn, Miami, Fla., for defendants Joseph Walker and Julia Walker.

James J. Gitomer, Baltimore, Md., for defendant Charles Burman, Sr.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

The purpose of this Memorandum and Order is to rule on an important issue presented in the motion of defendants Joseph and Julia Walker for new trial and in the motion of defendant Charles Burman, Sr. for new trial. That issue is whether there was a fatal variance between the allegations in the indictment and the proof at trial. One aspect of this issue concerns the appropriateness of the court's instructions to the jury relating to the question of multiple conspiracies.

The above-named defendants, along with nine other defendants who entered guilty pleas, were indicted for conspiracy to distribute heroin in violation of 21 U.S.C. Section 846. Said conspiracy is alleged to have taken place from January 1973 up to the date of the indictment. Basically, Count One of the indictment charges a conspiracy to distribute heroin in Baltimore, Philadelphia and Miami. It is alleged that the Walkers were large-scale heroin dealers in the Miami metropolitan area and that they would themselves or through couriers travel to Los Angeles, California, to obtain drugs from defendant Edward Robinson and unindicted co-conspirator Felix Mike. (Paragraph 14 of Count One). It is further alleged that defendant Robinson and Mike would bring heroin to the Walkers in Miami. (Paragraph 15 of Count One).

As to defendant Burman, the indictment charges that he was a large-scale heroin dealer in Baltimore City and Baltimore County and that he obtained large quantities of heroin from defendants James Kinner Conway and Leroy Tiller, Jr. for resale, said heroin having been obtained from defendant Robinson. (Paragraph 10 of Count One).

It is further alleged that defendants Sheppard, Mayo and Boyd distributed heroin obtained from defendant Robinson in the Philadelphia area. (Paragraphs 11–14 of Count One).

Finally, it is alleged that defendant Robinson, the main supplier of heroin to de-

fendants in Baltimore, Miami and Philadelphia, in turn obtained heroin from defendants Padilla-Sanchez and Calvillo-Flores. (Paragraphs 4 and 18 of Count One).

Defendants Joseph and Julia Walker and defendant Burman were tried before a jury in a trial that began on January 31, 1977. At the trial, the government presented evidence which, if believed by the jury, was sufficient to prove all of the indictment allegations mentioned above. The jury returned a verdict of guilty as to the Walkers on February 19, 1977, but was unable to reach a verdict as to Burman. The court declared a mistrial as to Burman on February 20, 1977. Burman was tried again before a jury from March 24, 1977 to March 30, 1977 and was found guilty.

The Walkers filed a motion for new trial and in arrest of judgment on March 10, 1977, and Burman filed such a motion on April 4, 1977. The main point raised in both motions is whether there was a fatal variance between the allegations in Count One of the indictment and the proof at trial in violation of the rule of *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In the court's view, there has been no fatal variance, and the defendants' motions for new trial on this ground must be denied.

Due to the increasing frequency of conspiracy indictments in narcotics cases and to the lack of authority on this question in the Fourth Circuit, the court considers it necessary to state the reasons for its ruling in this written opinion. As one commentator has stated, the rationale of *Kotteakos v. United States, supra*, imposes three major requirements on the district judge, one of which is " . . . articulation when denying motions for new trial based on claims of prejudicial variance, in order to provide the appellate courts with some of the benefits of first-hand observation." *See* Note, "Federal Treatment of Multiple Conspiracies," 57 Colum.L.Rev. 387 (1957) at 405.

### The Rule in Kotteakos

The controlling decision on the question of a single conspiracy being charged and

multiple conspiracies being proven is *Kotteakos v. United States, supra*. In that case, the government indicted thirty-two persons for a single conspiracy to induce various financial institutions to make loans which would then be insured by the Federal Housing Administration on the basis of fraudulent information. Nineteen of these persons were brought to trial, and seven were convicted. The evidence proved eight or more separate conspiracies by separate groups of conspirators which had little or no connection with each other. The Supreme Court reversed, stating:

> But if the practice here followed were to stand, we see nothing to prevent its extension to a dozen, a score, or more conspiracies and at the same time to scores of men involved, if at all, only separately in them. The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place. (328 U.S. at 774, 66 S.Ct. at 1252).

It is important to note that not every variance between the indictment and proof can or should be characterized as a fatal variance. The crucial question is whether the defendant has been prejudiced by the variance. This factor was highlighted by the Supreme Court in *Kotteakos* in the initial sentence of the opinion which states:

> The only question is whether petitioners have suffered *substantial prejudice* from being convicted of a single general conspiracy by evidence which the Government admits proved not one conspiracy but some eight or more different ones of the same sort executed through a common key figure, Simon Brown. (328 U.S. at 752, 66 S.Ct. at 1241, emphasis supplied).

It is to this question of substantial prejudice which the court will now turn.

### The Proof at Trial

In briefly reviewing the government's proof at trial, the court will consider first

the trial of the Walkers and then the second trial of Burman. At the Walkers' trial, the court ruled that it was for the jury to decide whether the government had proved one single overall conspiracy or several subordinate conspiracies. Thus, the situation differs from that in *Kotteakos* where it was clear, and the government admitted, that one single conspiracy had not been proved. This court held that the jury could find that the government had proved a single, overall conspiracy, the object of which was the importation of heroin from Mexican sources by Eddie Robinson and/or Felix Mike in Los Angeles and the distribution of quantities of that heroin to various other named defendants resident in Baltimore, Miami and Philadelphia. The court further held that the jury could find separate conspiracies, such as a conspiracy relating to alleged deals between the Philadelphia defendants and Robinson or Mike for the purchase of heroin obtained by Robinson or Mike from Padilla or Flores, another relating to similar alleged deals between the Miami defendants and Robinson and Mike in California, and a third relating to alleged deals between Burman through Tiller or Conway for purchase of heroin from Robinson.

At Burman's separate trial, the court also held that it was for the jury to determine whether the government had proved one single conspiracy or separate conspiracies such as those mentioned in the preceding paragraph. The main difference between the first and second trials is that the government introduced practically no evidence concerning the Miami and Philadelphia defendants at the second trial, the only defendant in the second trial being Charles Burman of Baltimore.

█ It is defendants' contention that the government failed to prove the existence of a single overall conspiracy as alleged in the indictment but rather proved a series of separate schemes involving Mexican sources of heroin, common Los Angeles major dealers, and separate outlying buyers in the cities named in the indictment. The outlying buyers are likened in their connection to Robinson and his sources to the spokes of a wheel, unconnected by any unifying rim. This is said to violate the principals laid down in *Kotteakos*. Accordingly, defendants contend that they are entitled to a new trial at which the jury should be instructed that it must acquit the defendants if the government fails to prove the one conspiracy alleged in the indictment. The court did not give such an instruction at the previous trial and does not consider such an instruction appropriate in a case where the jury could find either one overall conspiracy or several separate conspiracies. In light of defendants' contention, the court will turn to a review of the instructions given on multiple conspiracies and of the reasons for giving such instructions.

*The Instructions Given*

In relevant part, the court instructed as to the Walkers:

In the present case, the Government has alleged in the Indictment a single, overall conspiracy or agreement by and between numerous people whose names are set out in the Indictment, the object or purpose of which was the importation of heroin from Mexican sources by Eddie Robinson in Los Angeles and the distribution of quantities of that heroin to various other named Defendants resident in Baltimore, Miami and Philadelphia. The heroin deals allegedly were effected either by the out-of-California Defendants coming to California to buy from Robinson and/or Mike, or by Robinson and/or Mike delivering the heroin to the named Defendants in the three Eastern cities, Baltimore, Miami and Philadelphia. If you find beyond a reasonable doubt that Defendants Joseph Walker and Julia Walker became members of the conspiracy charged in the Indictment, and that the evidence would beyond a reasonable doubt support an inference that when they did so, that they knew heroin deals were being made by Robinson with other persons named in the Indictment in other cities, even though the Walkers themselves had no contact with these other East Coast Defendants and did not know

their identity, then you may find the Walkers were participants in the conspiracy charged in the indictment. . . . If you are not satisfied as to . . . Mr. and Mrs. Walker, you would then have to consider a further issue which I will now mention.

Although the Indictment in this case charges a single overall conspiracy, it would be possible to find separate conspiracies—for example, one relating to alleged deals between the Walkers and Robinson or· Mike for the purchase of heroin obtained by Robinson from Padillo or Flores, and another relating to alleged deals between Burman through Tiller or Conway for the purchase of heroin obtained by Robinson from Padillo or Flores.

Whether there was one conspiracy or two conspiracies or no conspiracies at all is a fact for you to determine in accordance with these instructions.

If the jury is not satisfied beyond a reasonable doubt that a single overall conspiracy has been proved, and that the Defendants were members of it, then the evidence regarding the heroin seized at the time arrests were made on December 11, 1974 in Los Angeles and also the evidence seized in the Yuma, Arizona incident involving Flores in May of 1976 should be completely disregarded by you and not considered in any way on the question of the guilt or innocence of Charles Burman or Joseph and Julia Walker.

If you do not find beyond a reasonable doubt that the Walkers conspired with the Baltimore Defendants Tiller, Conway and Burman—that is they were in the same and single conspiracy—but find that the Walkers did conspire with Robinson and/or Mike and Padillo, Flores and/or with others, you may, if the evidence so convinces you beyond a reasonable doubt, find the Walkers guilty of conspiracy. However, under this circumstance you would consider only the evidence admitted bearing on the guilt of the Walkers and not any of the evidence

relating to the Baltimore Defendants . . .

I have previously instructed you as to the consideration of the acts and declarations of one alleged conspirator as evidence against another alleged conspirator. You will not consider any such acts or declarations against any Defendant unless you find beyond a reasonable doubt that the person doing the act or making the declaration was a member of the same conspiracy as was that Defendant against whom the act or declaration is sought to be used.

The following instructions were given in the Burman trial:

The instructions I have just been giving you are designed to assist you in understanding the nature and meaning of a conspiracy charge and the elements you must find before you can hold the Defendant Burman guilty of such a charge.

There is another matter, however, which I want to instruct you about at this point before I finish on the law of conspiracy. In the present case the Government has alleged in the Indictment a single overall conspiracy or agreement by and between numerous people, whose names are set out in the Indictment, the object or purpose of which was the importation of heroin from Mexican sources by Eddie Robinson and/or Felix Mike in Los Angeles, and the distribution of quantities of that heroin to various other named Defendants resident in Baltimore, Miami, and Philadelphia. The heroin deals allegedly were effected either by the out-of-California Defendants coming to California to buy from Robinson and/or Mike or by Robinson and/or Mike delivering the heroin to the named Defendants in the three eastern cities of Baltimore, Miami and Philadelphia. You are, of course, here concerned only with the case against the Baltimore Defendant, Charles Burman. Although the Indictment in this case charges a single overall conspiracy, it would be possible to find separate conspiracies, for example, a conspiracy relating to the alleged deals between

Philadelphia Defendants and Robinson or Mike for the purchase of heroin obtained by Robinson or Mike, obtained from Padilla or Flores, or similar alleged deals between Miami Defendants and Robinson and Mike in California, and a third relating to alleged deals between Charles Burman through Tiller or Conway for purchase from Robinson and/or Mike.

Whether there was one conspiracy, several, or no conspiracies at all is a fact for you to determine in accordance with the instructions that I have given you with regard to a conspiracy.

You may find the Defendant guilty in this case beyond a reasonable doubt of participating in a single overall conspiracy, or you may find him not guilty of that conspiracy. If you do not find beyond a reasonable doubt that the Defendant, Charles Burman, conspired with the individuals named in the Indictment in one single overall conspiracy, but find that the Defendant Burman did conspire in a separate conspiracy with Defendants Tiller and/or Conway or Robinson and/or Mike or with others, you may, if the evidence so convinces you beyond a reasonable doubt, find the Defendant Burman guilty of the single separate conspiracy. If you are not satisfied beyond a reasonable doubt that he engaged in any conspiracy, then you would have to acquit him.

I previously instructed you as to the consideration of the acts and declarations of one alleged conspirator. You will not consider any such acts or declarations against the Defendant unless you find beyond a reasonable doubt that the person doing the act or making the declaration was a member of the same conspiracy as was the Defendant.

Thus, in net effect, the court instructed the jury that it could convict defendants of a separate conspiracy subordinate to but comprehended in the overall conspiracy charged in the indictment as long as such a conspiracy and defendants' participation in it were proved beyond a reasonable doubt. It is defendants' contention that the court

should have instructed the jury that it must acquit the defendants if the government proved a separate conspiracy but not the single, overall conspiracy charged in the indictment.

■ It is the court's conclusion that only in those cases where substantial prejudice to the defendants would result if the jury could convict them of a separate conspiracy should the jury be instructed that defendants must be acquitted. This is the meaning of the term "fatal variance." Not every variance is fatal or should result in automatic acquittal. The court finds support for its position in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and other cases to be discussed immediately below.

*Case Law*

In researching the question of fatal variance, the court has found a rather confused and contradictory body of case law, particularly concerning the question of appropriate jury instructions. Although all courts start with *Kotteakos*, they often reach different conclusions. This court has found the holding of *Berger, supra*, of particular guidance in resolving the conflicting approaches. In *Berger*, the Supreme Court stated:

The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense. (295 U.S. at 82, 55 S.Ct. at 630)

■ In the instant case, any variance in the proof is so minimal that the above two requirements are met. The defendants were informed of the charges against them because any separate subordinate conspiracy proved was simply an integral part of

the single overall conspiracy alleged. For example, the Walkers were charged with a single conspiracy including the Baltimore and Philadelphia defendants. They knew of this charge and had the opportunity to defend against it. If the government did not convince the jury of a single conspiracy but proved a separate Miami conspiracy, the court fails to see how the defense would change. The witnesses and the other evidence against the Walkers as defendants would be basically the same. This is not a situation where the government alleged one single conspiracy and proved another unrelated conspiracy. Rather, the jury could have found that the government proved several separate conspiracies, each of which was an important part of the single conspiracy alleged.

In addition, the defendants are in no danger of being prosecuted again for the same offense. If defendants were later indicted for a separate single conspiracy, it would be clear to the court that that separate conspiracy was simply a part of the larger conspiracy for which the defendants had been tried and convicted previously. Defendants would, consequently, be protected against another prosecution for the same offense.

Therefore, in the instant case, there is no reason for the allegations and proof to correspond exactly, for, even if they do not so correspond, defendants are informed of the charges against them and are protected against the possibility of another prosecution for the same offense. Where the separate conspiracies proved are but parts of the single conspiracy alleged, variance would not be fatal.

Before continuing, the court would like to make it clear that there was evidence from which the jury could have found that the government proved a single conspiracy as alleged in the indictment. This is not a situation where the government failed to prove a single conspiracy. It appeared to the court at the close of the government's case that the jury could find *either* a single conspiracy or separate conspiracies. In ruling on defendants' motion for judgment of acquittal on February 16, 1977, the court stated:

In this case, the important questions are whether a reasonable jury, viewing the evidence in a light most favorable to the government, could possibly find the existence of two or more conspiracies and, if so, whether this variance from the indictment is inherently prejudicial to any or all of these defendants. Various factual arguments have been made by counsel on both sides of this question. While the court believes that a jury possibly could discover multiple conspiracies from the government's case, such conspiracies are closely connected to the common purpose of protecting a nationwide distribution ring centered at the Robinson apartments in Los Angeles. In the court's view, it is unlikely that the jurors could find that the operation allegedly involving the Walkers is an entirely separate operation or that that involving defendant Burman is an entirely separate operation. Moreover, either of these conspiracies, if they are separate, are closely related by the presence of a single conduit—the Robinson-Felix Mike distribution and collections and importation activity. The close relationship between the narcotics businesses, if they are indeed separate, is confirmed by lack of immediate bias to any defendant from the variance since the indictment avers sufficient facts to apprise them of the criminal charges arising from any or all compacts developed by the government and to plead double jeopardy to later liabilities based on the same purported criminal incident. Finally the pressing danger of guilt transference between defendants involved in separate conspiracies is usually mitigated by an instruction to the jurors concerning multiple criminal agreements. Because the defendants have not shown that the present jury is unable to utilize such a charge and because the fact pattern in this case is much less complex in the court's view than five conspiracies found in *Griffin*, or the tangle of unrelated participants considered by the Supreme Court in *Kotteakos* as discussed, the mo-

tion for a judgment of acquittal, based on a fatal variance between the proof and the indictment, is denied.

In *United States v. Griffin*, 464 F.2d 1352 (9th Cir. 1972), the court affirmed the convictions of two drug purchasers even though the proof established at least five conspiracies in which none of the purchasers had anything to do with each other. The court emphasized the cautionary instruction given by the lower court and stated that by using that instruction the lower court "avoided one of the major errors committed in *Kotteakos*, namely failing to differentiate between conspiracies." (464 F.2d at 1357). The cautionary instruction given in *Griffin* is substantially the same as that given by the court in the instant case. The *Griffin* instruction read as follows:

Now, suppose—just because I don't know what your findings are going to be—but suppose that you do not find that the government has proven beyond a reasonable doubt the defendants Montano and Griffin were a part of the same single overall conspiracy. I don't know whether you can find that or not. That, of course, is your determination. There is an alternate area of the law that I wish to call to your attention, and that has to do with the individual conspiracies that may be found in this indictment.

If you do not find beyond a reasonable doubt that the defendant Montano conspired with defendant Griffin—that is they were in the same and single conspiracy—but find that the defendant Montano did conspire with Lorenzo Rodriguez and or Maria Bueno and or with others you may, if the evidence so convinces you beyond a reasonable doubt, find defendant Montano guilty of the conspiracy. However, under this circumstance—to which I'm just making reference—you cannot consider any evidence except that which was admitted against defendant Montano. Likewise if you do not find beyond a reasonable doubt that defendant Griffin conspired with defendant Montano in one single overall conspiracy, but find that the defendant Griffin did conspire with Lorenzo Rodriguez and/or

Maria Bueno or with others you may, if the evidence so convinces you beyond a reasonable doubt, find the defendant Griffin guilty of conspiracy. (464 F.2d at 1357)

After considering the above instruction, the court concluded:

The cautionary instruction largely attenuated any prejudice flowing from the establishment of the variance. Indeed, it should be noted that in none of the cases relied on by appellants was such an instruction given. Accordingly, we conclude the trial court's action placed a clamp on any possible prejudice which might have seeped from the variance. (464 F.2d at 1357).

The court also noted that the use of a cautionary instruction was recommended by the Seventh Circuit in *United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969). There the court stated:

Since the existence of multiple conspiracies is really a fact question as to the nature of the agreement, it is for the jury to decide whether there is one agreement or several. (citations omitted). Therefore, . . . when the possibility of a variance appears, [the district judge] should instruct the jury on multiple conspiracies as well. (407 F.2d at 746).

In *Kotteakos*, too, the Supreme Court noted that a precautionary instruction would be appropriate, advising the jury that it should take care to consider the evidence relating to each conspiracy separately from that relating to each other conspiracy charged. (328 U.S. at 769–770, 66 S.Ct. 1239) And in *Berger*, the Court stated:

But several circuit courts of appeals have held that if the indictment charges a single conspiracy, and the effect of the proof is to split the conspiracy into two, the variance is fatal. . . . This view, however, ignores the question of materiality, and should be so qualified as to make the result of the variance depend upon whether it has substantially injured the defendant. (295 U.S. at 81, 55 S.Ct. at 630)

In *United States v. Johnson*, 515 F.2d 730 (7th Cir. 1975), defendant was convicted on three counts of violating the Dyer Act and on one count of conspiracy. The court held that the conspiracy conviction should be reversed "as the consequences of the variance were not adequately explained to the jury . . . ." (515 F.2d at 731). The court stated:

> Of course, every variance is not fatal. . . . For it is clear that there are cases in which a variance involving only two conspiracies is sufficiently prejudicial to require reversal, and it is equally clear that the adequacy of the trial judge's instructions are of critical importance in evaluating the likelihood of confusion or prejudice. (515 F.2d at 736)

In *Johnson*, unlike the instant case, the evidence was insufficient to establish defendant's participation in the single overall conspiracy charged in the indictment. The court held that defendant was entitled to have the jury instructed that evidence which related only to a separate conspiracy in which he was not involved was not admissible against him. The court expressly rejected defendant's contention that he was entitled to an acquittal as a matter of law.

In the instant case, where the government has proved one single overall conspiracy, it appears to the court that the *Johnson* holding should apply. Certainly if a defendant is not entitled to acquittal as a matter of law where the government failed to prove one conspiracy, as in *Johnson*, he would not be so entitled where there is enough evidence that the government has proved one single conspiracy that the question of single or multiple conspiracies should be submitted to the jury.

■ The court's jury instructions met the criteria set out in *Johnson*. The court instructed the jury in the Walkers' trial that, if they found a separate conspiracy involving the Walkers and Robinson, they were to consider only the evidence bearing on the Walkers and none of the evidence relating to the Baltimore defendants. Similarly, the court instructed the jury at the Burman trial that it could not consider the acts or declarations of any alleged coconspirator against defendant unless that person was in the same conspiracy as defendant. A more elaborate instruction was not necessary in the Burman trial because the government did not present evidence concerning the Miami or Philadelphia defendants at that trial.

In reviewing the above cases—*Griffin, Varelli* and *Johnson*—the court concludes that its jury instructions would be appropriate in the Seventh and Ninth Circuits. The instructions leave the question of a single or multiple conspiracy up to the jury and caution the jury that, if they find multiple conspiracies, they should keep the evidence as to one conspiracy separate from that as to some other separate conspiracy. Such instructions minimize the possibility of any prejudice resulting from proof of multiple conspiracies. The fact that the jury convicted the Walkers in the first trial but was unable to reach a verdict as to Burman indicates that the spill-over effect of the evidence from one defendant to another was minimal.

This prejudice test has also been adopted by the Second Circuit Court of Appeals, a court which has had occasion to rule on the multiple conspiracy problem with frequency, as the cases noted below will indicate. In *United States v. Bertolotti*, 529 F.2d 149 (2nd Cir. 1975), the court held that a prejudicial variance between the indictment and the proof required reversal. The court employed the prejudice test as articulated by the Supreme Court in *Berger*, stating:

> Since the indictment charges one overall conspiracy and the proof shows a series of smaller ones, there has been a material variance. Remaining for our consideration is the question of which defendants were so prejudiced by the variance as to be entitled to a reversal of their convictions. . . . Although the prejudice caused by a variance can take many forms, we are concerned here solely with . . . a spill-over effect: the transference of guilt from members of one conspiracy to members of another. . . . (529 F.2d at 155–156)

In *Bertolotti*, unlike the instant case, the government failed to prove one overall conspiracy. The government attempted to combine certain cash thefts with narcotics transactions into one conspiracy. The court held that these thefts, "unorthodox and diverse transactions," were too far removed from traditional dealing in narcotics to be considered part of a single conspiracy. The court went on to hold that defendants were substantially prejudiced by evidence as to the thefts:

> The prejudicial effect, however, of requiring the jury to spend two entire days listening to obviously shocking and inflammatory discussions about assault, kidnapping, guns and narcotics cannot be underestimated. No defendant ought to have a jury which is considering his guilt or innocence hear evidence of this sort absent proof connecting him with the subject matter discussed. With respect to at least five of the appellants, no such proof was ever convincingly produced. (529 F.2d at 158).

In the court's opinion, the *Bertolotti* case is easily distinguishable from the instant case and from the average narcotics case. As the court pointed out in *Bertolotti*, the thefts were far removed from the usual narcotics transaction and clearly involved only a few of the defendants. The government produced no evidence linking the remaining defendants with these separate thefts.

In *United States v. Agueci*, 310 F.2d 817 (2nd Cir. 1962), the court explained the prejudice test as follows:

> The material inquiry is not the existence but the prejudicial effect of the variance. While we believe, as we have already stated, that the jury could find there was but one conspiracy, the finding of more than one conspiracy would not result in prejudice to any of the defendants in the case before us. . . . The requirements for sustaining a verdict in which there has been a variance have been met. The several conspiracies, if there had been such, could have been joined in a single indictment or consolidated for a single trial and the conduct of the trial was such that the danger resulting from the admission of evidence not chargeable to any appellant was minimal. . . . Again *Kotteakos*, where the prosecution of thirty-two defendants resulted in proof of at least eight separate conspiracies, is inapplicable. (310 F.2d at 827–828)

The case of *United States v. Calabro*, 449 F.2d 885 (2nd Cir. 1971), appears somewhat troublesome at first glance. In that case, the court held that the evidence established the single conspiracy charged and that a further instruction of multiple conspiracy was not required. In the course of its opinion, the court stated:

> We find no basis for believing that the jury thought that it might convict if it found multiple conspiracies. While it is better practice to instruct the jury that they must acquit if they find multiple conspiracies when only one conspiracy is charged, we hold that the failure to do so here was not reversible error. (449 F.2d at 894).

But, in *United States v. Tramunti*, 513 F.2d 1087 (2nd Cir. 1975), the court limited the above statement in *Calabro*. The court held, *inter alia*, that the convictions were supported by the evidence. Defendants had contended that the indictment charged only a single conspiracy while the evidence proved the existence of two independent and competing conspiracies. The court reasoned:

> While much of the evidence did indicate that there were two spheres of operation in the narcotics conspiracy that was established, there was sufficient proof of mutual dependence and assistance to warrant treatment of the two spheres as one general business venture. (513 F.2d at 1106)

In considering the jury instruction, the court stated:

> The request . . . to charge that if multiple conspiracies had been proven then the Government has failed to prove the single conspiracy alleged in the in-

dictment and there must be acquittal, fails to take into account the very real possibility that *one* of the proven conspiracies was the single conspiracy charged. While there is language in *United States v. Calabro*, 449 F.2d 885, 894 (2nd Cir. 1971), that 'it is better practice to instruct the jury that they must acquit if they find multiple conspiracies when only one conspiracy is charged,' the decision was that a failure so to charge is not error where the charge examined as a whole stresses that there must be finding of the single conspiracy charged and individual knowing participation by each individual in it. *Id. . . . Kotteakos, supra*, it will be recalled, involved a situation in which 'the jury could not possibly have found, upon the evidence, that there was only one conspiracy.' 328 U.S. at 768, 66 S.Ct. at 1249. In that situation, where only separate and distinct conspiracies are shown, and the single conspiracy alleged is not proven, acquittal is required and the request must be given. Here, however, where there was proof of the single overall conspiracy, the fact that there also was evidence adduced of other conspiracies or that the jury could have found two *major* conspiracies does not require a mandatory charge of acquittal. (513 F.2d at 1107–1108).

As in *Tramunti*, the government here proved one single overall conspiracy. Therefore, it was not necessary for the court to charge that the jury must acquit if they found multiple conspiracies. The court's statement in *Calabro* is not applicable to the situation presented here and in *Tramunti* where a single conspiracy has been proved.

In *United States v. Miley*, 513 F.2d 1191 (2nd Cir. 1975), the court held that there was no prejudicial variance. The court found first, that there was a variance between the offense charged in the indictment and the proof adduced at trial, continuing as follows:

This, however, does not automatically require reversal. Where the indictment charges one conspiracy but the proof shows more than one, a variance is not necessarily fatal. 'The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused.' [citing *Berger*]

Upon a review of the above cases, the court concludes that the substantial prejudice approach it took in ruling on defendants' motions for judgment of acquittal was proper. In addition, the cases do not support the kind of instruction requested by defendants which would require acquittal if the government proved more than the one conspiracy alleged in the indictment. This is particularly true where it would be possible from the proof for the jury to find that the government did in fact prove the conspiracy charged.

If the jury was not convinced that the government proved one single conspiracy but concluded that several conspiracies were proved, any possible prejudice to defendants was minimized by the court's instructions which admonished the jury to keep the proof as to each possible conspiracy separate. As the court noted in *Griffin, supra*, such an instruction goes a long way in avoiding prejudice to the defendants.

Accordingly, as defendants have failed to show that they were prejudiced by any possible variance between the charge in Count One of the indictment and the proof at trial, the court holds that the motions for new trial of the Walkers and of Burman on this ground must be denied.